Filed 8/19/14  In re E.G. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re E.G. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>T.G. et al.,<br><br>    Defendants and Appellants. | E060865<br><br>(Super.Ct.Nos. J245983 & J245984)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant T.G.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant J.C.

1

Jean-Rene Basle, County Counsel, and Regina A. Coleman, Deputy County Counsel, for Plaintiff and Respondent.

On October 29, 2013, after 13 months of reunification services, the juvenile court terminated defendants and appellants' (collectively parents) reunification services with respect to minors E.G. (born in 2012) and T.G. (born in 2010). On March 3, 2014, the juvenile court terminated parents' parental rights and found minors adoptable. On appeal, parents contend the court erred in finding the parental benefit exception to termination of parental rights did not apply. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff and respondent San Bernardino County Children and Family Services (CFS) detained minors E.G. and T.G. when mother and E.G. both tested positive for methamphetamine at E.G's birth. Mother admitted smoking methamphetamine right before E.G. was born, but said this was her only use of methamphetamine and that she had no previous history of substance abuse. However, mother had 16 prior CFS referrals going back to 2003, almost all of which related to substance abuse. T.G. had tested positive for methamphetamine and marijuana at her birth in 2010. Mother had a prior conviction for possession of controlled substances. Father had two convictions for possession of controlled substances.

The juvenile court detained minors on September 18, 2012, ordered parents reunification services, and granted visitation of three hours, one day a week. In the jurisdictional and dispositional report dated October 5, 2012, the social worker reported

2

parents indicated they had been clean for a month, the longest they had ever been sober since their relationship began three years earlier. Parents had supervised visitation with minors several times a week.

On October 9, 2012, the juvenile court removed minors and ordered visitation of two hours, three times weekly. In a status review report dated April 5, 2013, the social worker observed mother had tested negative for drugs. Mother was receiving individual counseling; however, the therapist "expressed concern about the mother's lack of participation in therapy. He reports that [mother] has stated that she has no problems with anyone in her family and does not know why her children are in foster care because she no longer uses drugs, everything is fine." The therapist was contemplating terminating mother's therapy due to her lack of participation, but the social worker convinced the therapist to hold off until the social worker could speak with mother regarding the issue.

Father tested negative for drugs, but missed "numerous" tests due to classes, illness, and time spent seeking employment. Parents visited minors twice a week together; mother visited minors alone one morning once a week. The visits reportedly went well. Parents took turns caring for minors including feeding and bathing them. At the six month review hearing on April 9, 2013, the juvenile court found parents' progress "substantial" and continued reunification services.

On June 27, 2013, CFS filed a supplemental juvenile petition alleging the relatives with whom minors had been placed had been emotionally abusing minors' sibling, had

pushed minors' sibling down, and had been physically disciplining minors. Additional allegations against parents were made that they had been involved in incidents of domestic violence. On June 28, 2013, the juvenile court detained minors from the relative placement.

In a July 16, 2013, report, the social worker noted mother had reported using methamphetamine since she was 17 years old. Father reported using marijuana beginning at the age of 15 and methamphetamine at the age of 16. On August 26, 2013, the social worker reported that both parents had incurred one positive and one negative drug test in July 2013. Parents had attended only one of six therapy sessions scheduled between July 1, and August 13, 2013. Nevertheless, it was reported parents had made some forward progress in individual therapy by recognizing their responsibility for the current circumstances.

At a contested jurisdiction and disposition hearing on the supplemental petition on August 26, 2013, the juvenile court removed minors from the relative caregiver placement. Parents were granted two-hour, once-weekly, supervised visitation with minors. CFS had authority to liberalize visitation once parents completed the drug component of their services.

In the October 1, 2013, status review report, the social worker recommended the juvenile court terminate parents' reunification services. Parents had twice relapsed during the reporting period. Mother admitted using methamphetamine on May 15, 2013, tested positive for alcohol on May 16, 2013, and tested positive for methamphetamine

again on July 22, 2013. Father tested positive for methamphetamine on May 20, and July 30, 2013. Parents admitted to their therapist they had domestic violence issues.

Parents had been evicted from their apartment, had broken up, and were looking for separate places to live. Father had found employment, but was fired after a month. Mother had been unemployed during the entirety of the juvenile proceedings until she began working at McDonald's one and a half months earlier. Mother completed 45 weeks of a parenting program. Father completed 39 weeks of the parenting program. Mother had several unexcused absences from individual counseling. Father's participation in individual counseling had lapsed recently. The social worker noted "parents love their children but seem unable at this time to provide a stable home environment that is void of domestic violence and relapses in substance abuse."

Twice weekly visitation between parents and minors had gone well: "The parents have for the most part been consistent with visits with the minors and seem to enjoy playing with their young children. The mother often brings food for the children and both parents are able to spend equal time with them. The parents have missed very few visits during this reporting period." Nevertheless, the social worker opined, "It appears that to return the children to their parents would create a substantial risk of detriment to the physical and/or emotional well-being of the children, because the parents have failed to participate regularly in the court-ordered treatment plan."

In a subsequent report, the social worker informed the juvenile court mother had been arrested on September 19, 2013, for copying credit card numbers while working at

McDonalds; Mother purchased food at another restaurant with one of the credit card numbers. Mother missed visits with minors on October 8, and 18, 2013. Parents missed a number of individual counseling sessions in September and October 2013. Mother tested positive for methamphetamine on October 14, and 28, 2013. Father "was not able to produce for" two drug tests, but tested negative on October 16, 2018. Parents had failed to turn in Narcotics Anonymous and Alcoholics Anonymous (NA/AA) attendance sheets for the preceding three weeks.

At the 12-month hearing on October 29, 2013, father testified he had completed a drug program and two parenting programs. Father attended the three weeks of NA/AA meetings, but the attendance sheets were missing. Although he was required to attend two NA/AA meetings a week, he would miss "a week here and there." Father was unable to give a urine sample for drug testing on October 15, 2013. Father admitted he is a drug addict who has been using drugs since he was a teenager. He missed six counseling sessions in August 2013. The juvenile court terminated parents' reunification services, scheduled the Welfare and Institutions Code section 366.26 hearing,[1] and limited visitation to once monthly, giving CFS authority to liberalize visitation if parents became sober and were participating in services.

---

[1] All further statutory references are to the Welfare and Institutions Code.

6

In a subsequent report, the social worker noted minors had been placed with the current foster parents on June 24, 2013.[2] The social worker observed, "The foster parents appear genuinely bonded to [minors] and have stated several times, they would like to be considered if [minors] were eligible for adoption." On January 8, 2014, the juvenile court granted the foster parents request for de facto parent status.

In the section 366.26 report dated February 14, 2014, the social worker recommended parents' parental rights be terminated. Parents had visited with minors on November 12, December 17, 2013, and January 28, 2014. The visits were deemed appropriate. The social worker noted minors have a secure bond and attachment with the foster parents whom they see as parental figures.

At the section 366.26 hearing on March 3, 2014, father testified that before minors had been taken into protective custody, parents took care of them. They fed, bathed, dressed, loved, and played with them. T.G. loves him, tells him she loves him, calls him dad, and asks when she can return home to him. Father testified he "made all my visits."

Mother testified she fed, loved, and cared for T.G. T.G. calls her "mommy." T.G.'s face lights up and she goes directly to father when she sees him as she favors him. Mother cared for, fed, and changed E.G.'s diapers before he was taken into protective custody. Mother had obtained another job "because I was working at McDonald's, but they weren't giving me enough hours . . . ." Mother currently lives with and is in a

_____

[2] Later reports indicate the date was one day later, June 25, 2013.

7

relationship with father. Mother testified she and father stopped participating in treatment when their reunification services were terminated. Nevertheless, mother continued to attend NA/AA meetings two to three times weekly since her services were terminated. The social worker testified parents were discharged from their substance treatment program on October 31, 2013, due to nonattendance.

The juvenile court found that, "Right now the only bond that the children have that is significant is their significant relationship and bond with their current caregivers." The court further noted "the parents have been visiting, but that's all I can say about the parents' contact with the [] minors, and the preference for their young age at the time of removal is adoption, and they are with caretakers who prefer to adopt." The court terminated parents' parental rights.

DISCUSSION

Parents contend the court erred in failing to apply the beneficial relationship exception to termination of their parental rights. We disagree.

Once reunification services have been terminated and a minor has been found adoptable, "adoption should be ordered unless exceptional circumstances exist." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 51.) Under section 366.26, subdivision (c)(1)(B)(i), one such exception exists where, "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." A beneficial relationship is established if it "'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with

8

new, adoptive parents.'" (*In re Brandon C.* (1999) 71 Cal.App.4th 1530, 1534 quoting *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) The parent has the burden of proving termination would be detrimental to the child. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350; *In re Jerome D*. (2000) 84 Cal.App.4th 1200, 1207.)

"'[T]he court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent[-]child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' [Citation.]" (*In re C.F.* (2011) 193 Cal.App.4th 549, 555.)

"[I]t is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1350; accord *In re Casey D.*, *supra*, 70 Cal.App.4th at p. 51.) "We determine whether there is substantial evidence to support the trial court's ruling by reviewing the evidence most favorably to the prevailing party and indulging in all legitimate and reasonable inferences to uphold the court's ruling. [Citation.] If the court's ruling is supported by substantial evidence, the reviewing court must affirm the court's rejection of the exceptions to termination of parental rights . . . . [Citation.]" (*In re S.B.* (2008) 164 Cal.App.4th 289, 297-298.)

Here, substantial evidence supported the juvenile court's conclusion that termination of parents' parental rights would not be detrimental to minors. First,

9

although father testified he "made all [his] visits," the record reflects parents did miss some of their visits. Although parents' visits were mostly consistent, it must be considered in context of the visitation parents were granted. The visits parents missed came toward the end of the proceedings when parents had only been granted once-weekly visitation. Thus, missing visits at that juncture in the case was more serious than it would have been earlier in the proceedings when parents had thrice-weekly visitation.

Second, parents never progressed to unsupervised visits. Indeed, parents digressed from thrice-weekly visits to once-monthly visits due to their failure to maintain sobriety and participation in treatment programs. Third, minors had been out of parents' custody for nearly 15 months at the time the juvenile court terminated parents' parental rights. E.G. had been only about two weeks old when he was placed in protective custody. Thus, he had spent the vast majority of his life out of the care and custody of parents. Although T.G. was three years old when placed in protective custody, she had likewise spent the last 15 months, more than a quarter of her life, out of parents' custody.

Fourth, minors had been placed with the current foster parents almost eight months earlier; it was the foster parents who took care of minors' daily needs. The social worker noted, "The foster parents appear genuinely bonded to the children and have stated several times, they would like to be considered if the children were eligible for adoption." Minors had a secure bond and attachment with the foster parents whom they viewed as parental figures. The evidence supported the court's determination that the only significant bond the children had was with the foster parents. Thus, parents have

failed to demonstrate any benefit minors derived from a continued relationship with parents outweighed the benefit of gaining an adoptive home with the foster parents. Therefore, the court properly terminated parents' parental rights.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

KING
J.

11